# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One black Apple iPhone<br>DEA SSEE S001538193 | )<br>)<br>)   Case No.   '22 MJ3807<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1, incorporated herein by reference.

located in the    Southern    District of    California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Possession with the Intent to Distribute Controlled Substances and Conspiracy Related Thereto |

The application is based on these facts:
See Affidavit of DEA Special Agent Josue Alvarez, which is hereby incorporated by reference and made part hereof.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Josue Alvarez, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
____telephone____ *(specify reliable electronic means)*.

Date: 10/17/2022

_____
*Judge's signature*

City and state: San Diego, California    Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Josue Alvarez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> One black Apple iPhone
> DEA SSEE S001538193
> (**Target Device 1**)
>
> One black TracFone TCL
> DEA SSEE S001538194
> (**Target Device 2**)
>
> One black Samsung Phone
> DEA SSEE S001538195
> (**Target Device 3**) (collectively, the **Target Devices**)

as further described in Attachments A-1, A-2, and A-3, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Rudy TRUJILLO and Isaac TORRES, who were arrested on or about September 28, 2022, for possessing, with the intent to distribute, approximately 110,000 counterfeit Oxycodone pills made with fentanyl weighing approximately 12.84 kilograms (28.3 pounds). The **Target Devices** are currently in the custody of the Drug Enforcement Administration located at 4560 Viewridge Avenue, San Diego, California 92123.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Special Agent (SA) Criminal Investigator for the United States Drug

Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. Further, I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

4. I have worked in federal law enforcement since January 13, 2013. Prior to working for the DEA, I was employed by the Department of Homeland Security, Customs and Border Protection, as both a United States Border Patrol Agent (BPA) and a Customs and Border Protection Officer (CBPO). I attended both the United States Border Patrol Academy and the Field Operations Basic Officer Academy where I received training in drug identification, criminal law, and drug trafficking methods and tactics. During my time as a BPA, I participated in the identification and seizure of various narcotics interdictions.

5. I have been a SA since December 2021. My training included a 17-week Basic Agent course at the DEA Academy where I received training in surveillance techniques, drug identification, law, confidential source management, methods and tactics of narcotics trafficking, and various aspects of conducting narcotics investigations.

6. Upon graduation from the DEA Academy, I was assigned to San Diego Field Division where I currently am assigned to Narcotic Task Force (NTF) Team 1. NTF Team 1 is comprised of DEA SAs and Task Force Officers (TFOs) from the San Diego Police Department (SDPD) and San Diego County Sheriff's Department (SDSO). NTF Team 1 investigates U.S. and foreign-based individuals and illegal Drug Trafficking Organizations (hereinafter, DTOs), including those organizations whose operations involve the wholesale distribution quantities of cocaine, methamphetamine, heroin, fentanyl, and marijuana.

7. While with the DEA, I have participated in investigations involving federal violations of Title 21. I have conducted surveillance on multiple narcotics transactions,

processed both drug and nondrug evidence, and been present during confidential source (CS) meetings. Based on my training, experience, and information provided to me by other agents from federal, state, and local law enforcement agencies, I am familiar with investigations of DTOs, including identifying methods of importation and distribution of controlled substances, and how controlled substances are manufactured, consumed, packaged, marketed, smuggled, and distributed. I am also familiar with various tactics used by DTOs to import drugs into the United States, communicate with members of the DTOs, and arrange for transportation and distribution of drugs.

8. Based upon my training and experience as a DEA SA, consultations with other law enforcement officers experienced in narcotics investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers often work in concert utilizing cellular/mobile telephones because they are mobile and provide instant access to calls, text messaging capabilities, web, and voice messages.

    b. Drug traffickers often use cellular/mobile telephones in order to arrange the distribution or possession with the intent to distribute their illegal cargo.

    c. Drug traffickers often use cellular/mobile telephones in order to provide instructions and synchronize an exact drop off and/or pick up time of their illegal cargo.

    d. Drug traffickers often use cellular/mobile telephones to notify or warn accomplices of law enforcement activity, including the presence and posture of marked and unmarked units.

9. Based upon my training, experience, consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats

and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the trafficking of narcotics may yield evidence:

    a. tending to indicate efforts to distribute or possess with the intent to distribute federally controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the distribution or possession with the intent to distribute federally controlled substances;

    c. tending to identify co-conspirators, criminal associates, or others involved in the distribution or possession with the intent to distribute federally controlled substances;

    d. tending to identify travel to or presence at locations involved in the distribution or possession with the intent to distribute federally controlled substances, such as stash houses, load houses, or delivery points;

    e. tending to identify the user(s) of, or person(s) with control over or access to, the **Target Devices**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

10. Since August 2022, DEA SDFD NTF SAs and TFOs have been investigating the ongoing drug-trafficking activity of TRUJILLO and his co-conspirators in the Southern District of California. That work has involved the participation of a DEA confidential

source[1] (CS), and has included a dry-meet between the CS and TRUJILLO, as well as a buy bust operation effectuated on or about September 28, 2022.

A.     August 2022 Buy-Bust Attempt

11.     On or about August 30, 2022, the CS provided a Mexican phone number utilized by an unknown Hispanic male only known as "GALLERO," who agents believe resides in Mexico. At the direction of agents, the CS and GALLERO engaged in negotiations over the WhatsApp phone application regarding GALLERO selling the CS methamphetamine and fentanyl pills (also known as M30 pills). GALLERO agreed to sell the CS 50 pounds of methamphetamine and 100,000 M30 pills on August 30, 2022, in San Diego, California.

12.     During the subsequent meeting, no courier arrived with the narcotics, however GALLERO provided the CS with a U.S. based phone number belonging to "EL GUERO," later identified as TRUJILLO. At the direction of agents, the CS communicated with TRUJILLO who relayed they did not have the narcotics. The operation was terminated by investigators.

---

[1] Members of DEA's SDFD have known and worked with this CS since June 2014. The CS has, in the past, given information that controlled substances, including methamphetamine, were to be found at specified locations and on persons who were named and described by the CS. These locations and persons were subsequently investigated and determined that the information was correct in all respects. Information furnished by the CS has resulted in numerous arrests for controlled substances violations and the recovery of substantial amounts of contraband to include methamphetamine, cocaine, heroin, fentanyl, firearms, and drug proceeds.

Law enforcement officers have been involved in more than 20 controlled purchases, arrests, and or search warrant operations since June 2014 in which the CS's observations and information were relied upon by investigating officers. Each of these operations resulted in drug and/or firearms related arrests, in each case corroborating the information that had been previously relayed to controlling investigators by the CS. I know the CS to be familiar with the methods of packaging, consumption, and transfer of those substances.

Over 5 years ago, the CS was convicted of a violation of conspiracy to import a controlled substance.

B.   September 2022 Dry Meet

13.   On or about September 21, 2022, the CS and GALLERO agreed to a dry meet in San Diego, California. Prior to meeting with the CS, TRUJILLO communicated with the CS by phone. During the meeting arranged by GALLERO, the CS met with TRUJILLO in the vicinity of the McDonald's parking lot located at 4449 Camino de la Plaza, San Ysidro, California 92173 on September 21, 2022. TRUJILLO met with the CS inside an undercover vehicle provided to the CS and discussed a future deal of 50 pounds of methamphetamine and 100,000 M30 pills. This meeting was captured in audio and video recording.

14.   Following the meet, investigators observed TRUJILLO driving a gray Jeep bearing California license plates (the Jeep). The Jeep is registered to TRUJILLO.

C.   September 28, 2022 Buy Bust

15.   On September 28, 2022, SAs and TFOs, in conjunction with law enforcement from SDPD and CBP, conducted a "buy-bust" operation utilizing the CS in the vicinity of the Sam's Club parking lot located at 6336 College Grove Way, San Diego, California 92115. Law enforcement established surveillance at TRUJILLO's residence and in the vicinity of the Sam's Club parking lot. Prior to the meet, investigators observed TRUJILLO depart the vicinity of his residence carrying a cardboard box that he subsequently placed into a white Volkswagen Jetta bearing California license plates (the Volkswagen Jetta). Investigators observed TRUJILLO get into the driver's seat of the Volkswagen Jetta. TORRES was observed getting into the driver's seat of TRUJILLO's Jeep. Investigators followed TRUJILLO and TORRES to the meet location and observed them drive in tandem. Based training, experience, and conversations with other law enforcement, investigators know that is common for drug traffickers to drive in tandem to meet locations in multiple vehicles. One vehicle will typically contain the narcotics while the other vehicle is utilized as a "lookout" to monitor for law enforcement activity.

16.   Law enforcement observed the CS park the undercover vehicle provided to the CS in the Sam's Club parking lot. Subsequently, law enforcement observed

1 TRUJILLO enter the front passenger seat of the undercover vehicle. Thereafter, the CS
2 and TRUJILLO, in the undercover vehicle, drove to the Sam Ash Music Stores parking lot
3 located at 3418 College Avenue, San Diego, California 92115. Moments later, the CS and
4 TRUJILLO exited the undercover vehicle and approached a secondary vehicle at which
5 point an undercover law enforcement officer conducted a money flash of $150,000 for
6 TRUJILLO.

7     17. Subsequently, the CS and TRUJILLO returned to the vicinity of the Sam's
8 Club parking lot and parked facing the Volkswagen Jetta. TRUJILLO directed the CS to
9 a cardboard box located in the Volkswagen Jetta where the CS observed a large number of
10 pills. After obtaining the arrest signal from the CS, law enforcement arrested TRUJILLO
11 in the undercover vehicle without incident. Investigators located and seized from the
12 Volkswagen Jetta approximately 110,000 "M30" pills weighing approximately 12.84
13 kilograms (28.3 pounds) inside the cardboard box. Investigators later field-tested one of
14 the pills which resulted in a presumptive positive for fentanyl.

15     18. During a search of TRUJILLO, **Target Device 1** was found on his person and
16 seized. **Target Device 2** was found during a search of the Volkswagen Jetta.

17     19. Simultaneously, law enforcement contacted and arrested TORRES in the Jeep
18 which was parked in the same parking lot near Salon Centric, 6348 College Grove Way,
19 San Diego, California 92115. **Target Device 3** fell from TORRES's lap onto the ground
20 during his arrest.

21     20. Based upon my experience, training, consultation with other law enforcement
22 officers experienced in narcotics trafficking investigations, and all the facts and opinions
23 set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail
24 (email) addresses, appointment dates, messages, pictures and other digital information are
25 stored in the **Target Devices** and that this data may constitute evidence of crimes as
26 described in Attachment B. I hereby request that the court issue a warrant authorizing law
27 enforcement agents and/or other federal and state law enforcement officers to search the
28 **Target Devices**, and seize the items listed in Attachment B, using the methodology

described below.

21. In light of the above facts and my experience and training, I believe that there is probable cause to believe that TRUJILLO and TORRES were using the **Target Devices** to communicate with others to further the distribution or possession with the intent to distribute federally controlled substances. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug trafficking event in the days and weeks prior to an event. I am also aware that co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest in order to determine the whereabouts of the proceeds. Accordingly, I request permission to search the **Target Devices** for data beginning on August 29, 2022 (the date before the CS contacted GALLERO), up to and including September 29, 2022 (the day after the offense).

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and/or serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. While current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software, not all devices are amenable to

forensic data acquisition. Additionally, even where forensic data acquisition is possible, current technology may not extract *all* of the stored data. In such circumstances, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Devices** and subject the devices to analysis. The analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. Law enforcement has not previously attempted to obtain the evidence sought by this Affidavit.

//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

26. Based on all of the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of TRUJILLO's and TORRES's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, A-2, and A-3, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Josue Alvarez
DEA Special Agent

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 17th day of October, 2022

Honorable Karen S. Crawford
United States Magistrate Judge

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

>One black Apple iPhone
>DEA SSEE S001538193
>(**Target Device 1**)

**Target Device 1** is currently in the possession of the Drug Enforcement Administration located at 4560 Viewridge Avenue, San Diego, California 92123.

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

>One black TracFone TCL
>DEA SSEE S001538194
>(**Target Device 2**)

**Target Device 2** is currently in the possession of the Drug Enforcement Administration located at 4560 Viewridge Avenue, San Diego, California 92123.

# ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

> One black Samsung Phone
> DEA SSEE S001538195
> (**Target Device 3**)

**Target Device 3** is currently in the possession of the Drug Enforcement Administration located at 4560 Viewridge Avenue, San Diego, California 92123.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephones described in Attachments A-1, A-2, and A-3 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone(s) for evidence described below. The seizure and search of the cellular/mobile telephone(s) shall follow the search methodology described in the affidavit submitted in support of the warrant(s).

The evidence to be seized from the cellular/mobile telephone(s) will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 29, 2022 (the date before the CS contacted GALLERO), up to and including September 29, 2022 (the day after the offense):

a. tending to indicate efforts to distribute or possess with the intent to distribute federally controlled substances;

b. tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the distribution or possession with the intent to distribute federally controlled substances;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution or possession with the intent to distribute federally controlled substances;

d. tending to identify travel to or presence at locations involved in the distribution or possession with the intent to distribute federally controlled substances, such as stash houses, load houses, or delivery points;

e. tending to identify the user(s) of, or person(s) with control over or access to, the **Target Device(s)**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.